IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BARRY J., )
)
Plaintiff, )
)
v. ) 1:22CV1139
)
MARTIN J. O'MALLEY,[1] )
Commissioner of Social Security, )
)
Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Barry J. ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI on November 4, 2020, alleging a disability onset date of January 1, 2011. (Tr. at 15, 179-89)[2] His application was denied initially

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #2].

(Tr. at 83-92, 103-07) and upon reconsideration (Tr. at 93-102, 111-13). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 116-20.) On February 28, 2022, Plaintiff, along with his attorney, attended the subsequent telephonic hearing, attended the subsequent hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 16, 27-55.) At the hearing, Plaintiff amended his alleged onset date to November 4, 2020, the SSI application date. Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 22), and, on October 24, 2022, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere

scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his application date of November 4, 2020. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Degenerative disc disease, Scoliosis, and Facet syndrome of the thoracic spine; Chronic fatigue syndrome; Hypertension; Obstructive sleep apnea; Obesity; Depression; Anxiety disorder; and Personality disorder[.]

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 17-18.) Therefore, the ALJ assessed

---

[the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

Plaintiff's RFC and determined that he could perform light work with further limitations. Specifically, the ALJ found that

> [Plaintiff can] frequently climb ramps/stairs, occasionally climb ladders/ropes/scaffolds; [and] frequently balance, stoop, kneel, crouch, and crawl[.] [He can have] no exposure to unprotected heights or moving mechanical parts; cannot operate a motor vehicle[, and is] limited to performing simple, routine tasks with a GED reasoning level of 1 or 2, but not at a production rate pace such as assembly line work or work with a production quota[. Plaintiff] can maintain concentration, persistence, and pace while performing simple, routine tasks for two-hour intervals[. He is] limited to making simple work-related decisions and tolerating occasional changes in a routine work setting[. He is further] limited to occasional interaction with co-workers and supervisors, [and] no more than incidental, superficial contact with the general public that does not involve customer service or conflict resolution.

(Tr. at 18.) The ALJ determined at step four of the analysis that the above RFC precluded all of Plaintiff's past relevant work. (Tr. at 20.) However, the ALJ also found at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the VE regarding those factors, Plaintiff could perform jobs available in substantial numbers in the national economy and therefore was not disabled. (Tr. at 21-22.)

Plaintiff now raises two challenges to the ALJ's RFC assessment. First, Plaintiff argues that "[t]he ALJ failed to apply the standards required by Social Security Rulings 96-8p and 16-3p for explaining and supporting the hearing decision's [RFC] assessment and the ALJ's evaluation of the symptoms of [Plaintiff's] medical impairments." (Pl.'s Br. [Doc. #5] at 2.) Second, Plaintiff contends that "[t]he ALJ relied on an incorrect regulatory framework when he assessed [Plaintiff's RFC]." (Pl.'s Br. at 2.) After a thorough review of the record, the Court agrees that Plaintiff's first contention requires remand. Specifically, the Court finds that the ALJ failed to properly evaluate Plaintiff's subjective statements and explain the basis for his RFC determination.

6

Under the applicable regulations, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Social Security Ruling 96-8p; Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (internal quotation omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. at 34478. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cur. 2018) (internal brackets, emphases, and quotation omitted).

An ALJ's failure to sufficiently explain his conclusions about a claimant's residual functional capacity is an error of law that warrants reversal and remand. Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019). In Thomas, the Fourth Circuit explained that:

> The Administration has specified the manner in which an ALJ should assess a claimant's RFC. The ALJ must consider all of the claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." Monroe, 826 F.3d at 188. In doing so, the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion...." SSR 96-8P, 1996 WL 374184 at *7 (July 2, 1996). Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC.
>
> Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two. Indeed, our precedent makes

clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.

Thomas, 916 F.3d at 311.

In addition, with respect to evaluation of a claimant's symptoms, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 416.929. In Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

983 F.3d at 95–96. In the recent decision of Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 361–62 (4th Cir. 2023), the Fourth Circuit further explained that some conditions,

including major depression and fibromyalgia, do not manifest themselves in objective signs and symptoms. "[B]ecause of the unique and subjective nature of [such impairments], subjective statements from claimants [in these cases] 'should be treated as evidence *substantiating* the claimant's impairment.'" Id. (quoting Arakas, 983 F.3d at 97-98).

In this case, Plaintiff contends that the ALJ's decision completely omitted the second step of the subjective symptom analysis. The Court agrees. As set out above, after finding that a claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, an ALJ must "assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work." 983 F.3d at 96. The ALJ in the present case acknowledged his obligation at this second step, and also specifically explained that, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (Tr. at 19.) Nevertheless, the ALJ failed to follow these directives. Instead, he made a step one finding, then shifted abruptly to an analysis of the opinion evidence. (See Tr. at 19–20.) The ALJ never circled back to make the requisite step two finding, and, contrary to Defendant's assertions, such a finding cannot be pieced together from existing analysis. The ALJ's complete discussion of Plaintiff's subjective statements reads as follows:

> At the hearing, the claimant testified about his conditions. This claimant alleges disability since 2010 due to the medication side effects of amphetamines, which were prescribed due to fatigue. He could not concentrate, and has tried multiple medications to help with chronic fatigue without success. He still drives, usually locally. He feels tired and sleepy all day. He is not prescribed any medication currently for fatigue. He earns some money through online activity. He answers

9

> surveys, redeems rebates, watches videos, and plays video games. He spends 30 minutes to an hour each day on this activity. He earns $300-400 or less each month. He is also online for entertainment, and says that he is online "all day." He spends it at a desk or in a reclining chair; his fatigue does not interfere with his ability to be online during the day. He stated that his fatigue is not currently as bad as it was when he sought treatment in 2012. Sometimes he walks and does exercises during the day. He does not have to take his medication every day like he used to.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The claimant's record shows office visits throughout 2020 and 2021. A note from November 19, 2021 in Exhibit 5F notes that he [has] well controlled hypertension, and that he is followed by neurology for facet syndrome on a regular basis. A note from September 2021 in Exhibit 5F notes that the claimant has a history of pain that began in 2003 without any inciting event. The pain is located mid clavicular line around T6.

(Tr. at 19.) Although this passage recounts Plaintiff's reported symptoms and activities, nothing in this passage explains the extent to which Plaintiff's pain, fatigue, and other symptoms limit his ability to perform work activities, let alone the evidentiary basis for such limitations.

The ALJ's decision similarly fails to include a sufficient explanation of his ultimate analysis regarding the limitations contained in the RFC. The ALJ cites to a prior administrative decision and finds that this decision is "a good starting point, but [Plaintiff] should be given the maximum benefit of the doubt. The undersigned has therefore modified the [RFC] in consideration of [Plaintiff's] testimony about his limitations." (Tr. at 20.) To the extent that the ALJ found that the prior decision was "a good starting point" (Tr. at 20), the ALJ failed to further analyze and explain the prior decision and the subsequent medical evidence and how that led to the RFC. See also Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 477–78 (4th Cir. 1999). Notably, the ALJ in the current decision included as severe

Case 1:22-cv-01139-TDS-JEP   Document 9   Filed 02/26/24   Page 10 of 14

impairments: "Degenerative disc disease, Scoliosis, and Facet syndrome of the thoracic spine" (Tr. at 17), none of which were included as severe impairments in the prior administrative decision (Tr. at 62), but the ALJ did not address these impairments at all or explain how they were addressed in the RFC. Moreover, the current RFC omits or relaxes limitations included in the prior decision, such as a limitation to "few or no changes in the work setting," and a social limitation to "working in proximity to, but not coordination with, coworkers and supervisors," (Tr. at 65), but the ALJ does not address or explain the changes. Thus, the reliance on the prior administrative determination does not provide sufficient analysis or explanation to follow the ALJ's reasoning.

In addition, in setting the RFC from that starting point, the ALJ stated that Plaintiff "should be given the maximum benefit of the doubt," and the ALJ modified Plaintiff's exertional level from medium to light. (Tr. at 20.) However, to the extent this could be read as intending to credit all of Plaintiff's testimony, the ALJ failed to include all of the limitations set out in Plaintiff's testimony, including statements regarding fatigue and pain stating that he felt tired all day and did not want to do a lot or go anywhere (Tr. at 38-39), and testimony that he could not sit in an office chair for more than 30 minutes and would need to be in a recliner with his feet up (Tr. at 43, 45-46), and could "maybe" stand and walk 30 minutes but had not tried in over a year (Tr. at 44), and had not walked for 2 hours in over 12 years (Tr. at 46). As noted above, the ALJ did not make any findings or give any explanation regarding the

11

subjective symptom evaluation, and does not explain which parts of Plaintiff's testimony he credited or why the RFC did not include all of the limitations reflected in Plaintiff's testimony.[5]

Finally, the ALJ acknowledged Plaintiff's diagnosis of chronic fatigue syndrome, and listed it as a severe impairment that was not included in the prior administrative decision (Tr. at 62, 17). The ALJ noted that Plaintiff is limited "due to exhaustion," but the ALJ did not explain how that affected Plaintiff's ability to stand and walk as required for light work, or how Plaintiff was able to maintain the RFC for full time work despite the exhaustion. At the hearing, Plaintiff's counsel specifically discussed the fact that as a result of the chronic fatigue syndrome, Plaintiff did not engage in physical activity and was very sedentary, sitting in a reclined position all day, which helped to address his symptoms. (Tr. at 54.) In addressing Plaintiff's chronic fatigue syndrome, the ALJ noted only that "[f]inding only mild limitation to concentration, persistence and pace, for example, is not consistent with these findings." (Tr. at 20.) However, the ALJ did not provide any further analysis regarding what additional limitations were caused by Plaintiff's chronic fatigue syndrome.

In the briefing, Defendant points to the daily activities listed in the decision and elsewhere in the record as evidence that Plaintiff was not as limited as alleged. (Def.'s Br. [Doc. #7] at 6.) However, as Plaintiff correctly notes, the ALJ never made such a finding.

---

[5] Notably, an ALJ does not automatically err by giving a plaintiff "the maximum benefit of the doubt." If, for example, the ALJ had found that (1) Plaintiff's subjective complaints of fatigue and pain limit him, but not to the full extent alleged, (2) properly explained the basis for this finding in the decision, and then (3) modified Plaintiff's RFC from the prior findings and opinion evidence to the full extent supported by the credible subjective complaints, substantial evidence would support the ALJ's decision. Here, however, the ALJ omitted both the first and second of these three findings. The ALJ's decision does not assign weight to Plaintiff's symptoms, let alone contain specific reasons for that weight. As such, the ALJ's subjective symptom analysis is not "clearly articulated so [Plaintiff] and any subsequent reviewer can assess how the adjudicator evaluated [Plaintiff's] symptoms" as specifically required by SSR 16-3p and related case law.

Defendant also argues that "Plaintiff did not seek any mental health treatment during the relevant time period" (Def.'s Br. at 6), and that "[r]ecords from 2020 forward show relatively limited treatment for Plaintiff's physical impairments" (Def.'s Br. at 8), but again, the ALJ did not present these as factors in his subjective symptom analysis or elsewhere in the decision. As noted in Anderson v. Colvin, this Court's

> [r]eview of the ALJ's ruling is limited . . . by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court "must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."

Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)). Similarly, Defendant relies on evidence of Plaintiff's improvement over time. However, the ALJ did not rely on or cite to this evidence, and instead found that the new evidence "had changed little" about Plaintiff's material condition (Tr. at 20), except that the ALJ added the additional severe impairments of chronic fatigue syndrome, degenerative disc disease, scoliosis, and facet syndrome of the thoracic spine. Therefore, analysis of these medical records, and any statements in the records reflecting improvement and minimal pain, cannot be considered and relied on by the Court in the first instance.

Because it remains the lone province of the ALJ to undertake this analysis and make credibility determinations, this matter requires remand for the ALJ to properly evaluate Plaintiff's symptoms, articulate the reasons underlying his evaluation, and explain the effect of that determination on Plaintiff's RFC. See Mickles v. Shalala, 29 F.3d 918, 929 (4th

Case 1:22-cv-01139-TDS-JEP   Document 9   Filed 02/26/24   Page 13 of 14

Cir.1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations.") As the Fourth Circuit noted in Thomas, the Court "express[es] no opinion on whether the ALJ's RFC findings were correct," and instead the Court concludes only that the lack of sufficient explanation in the ALJ's RFC evaluation frustrate the Court's ability to conduct meaningful review, requiring the Court to vacate and remand so that the ALJ can give a clearer window into his reasoning. Thomas, at 916 F.3d at 313-14.[6]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding of no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). To this extent, it is recommended that Defendant's Dispositive Brief [Doc. #7] be DENIED, and Plaintiff's Dispositive Brief [Doc. #5] be GRANTED.

This, the 26th day of February, 2024.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[6] In light of this determination, at this juncture the Court declines to address the additional contention raised by Plaintiff.

14